**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
| Title | United States of America et al v. Honeywell International, Inc. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT (DKT. 73)**

I.      **Introduction**

This *qui tam* action arises out of sales of a navigation system by Honeywell International, Inc. ("Honeywell" or "Defendant") to the United States (the "Government"). The navigation system is designed for use on military aircraft and tanks. The sales occurred between 2003 and 2014. Dkt. 72, at 5-6. Daniel Thompson ("Plaintiff")[1] contends that Honeywell fraudulently charged the government software license fees in connection with those sales in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) and (2). *Id.* at 3. In support of this claim, Thompson alleges that the Government was entitled to a royalty-free license to use the software for government purposes because it partially funded material changes to the software. *Id.* at 7.

On November 8, 2013, the Court granted Defendant's Motion to Dismiss the Third Amended Complaint (the "TAC") without prejudice, *i.e.,* with leave to amend. Dkt. 67. The Court also granted Plaintiff's "Motion for Leave to File Fourth Amended Complaint" "conditional on Plaintiff's filing a revised [Fourth Amended Complaint] that includes additional and specific facts, alleged in good faith, to create a plausible inference with respect to each element of a cause of action under the False Claims Act."   Dkt. 67, at 2.

On November 22, 2013, Plaintiff filed the Fourth Amended Complaint (the "FAC"). Dkt. 72. On November 27, 2013, Defendant filed a Motion to Dismiss (the "Motion"). Dkt. 73. The Court heard oral argument on the Motion on January 13, 2014, and took the matter under submission. For the

---

[1] Since 2007, Thompson has been employed by General Atomics Aeronautical Systems Inc. ("GA-ASI") as a "Senior Subcontracts Administrator." Dkt. 72, at 2. Honeywell is a subcontractor on certain government contracts with GA-ASI related to the sales that underlie this action. Dkt. 53-3, Thompson Dec'l, at 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
|---|---|---|---|
| Title | United States of America et al v. Honeywell International, Inc. | | |

reasons set forth in this Order, the Motion is GRANTED WITH PREJUDICE, *i.e.*, without leave to amend.

## II.        Factual Background

Plaintiff alleges that, from 2003 until 2014, Honeywell sold thousands of units of a navigation system, the "H-764 High-Accuracy GPS Embedded Global Positioning System/Inertial Navigation System," to the Government for use on a range of military aircraft and tanks. Dkt. 72, at 5. The navigation system includes the "H-764 EGI software." *Id*. Before the navigation system is sold to the Government for use on a particular platform, *i.e.*, on a particular type of aircraft or tank, the software is "missionized" so that it will be effective for that particular use. *Id*. at 9-10. Plaintiff alleges that "the government exclusively funds the missionized H-764 EGI software." *Id*. at 8.

Plaintiff further alleges that, between 2003 and 2014, the "core software," *i.e.*, the base or "non-missionized" software that is a component of the H-764 system, was "materially changed" by the integration of 12 Government-funded software. *Id*. at 9. Prior to 2003, the "original core software" was "GCORE 1" and "GCORE 2"; after 2003, the core software that had been "materially changed" was called "GCORE 3, 4, 5 and 6." *Id*. at 12. In sum, Plaintiff contends that there are there are three separate forms of the H-764 EGI software at issue: "(1) missionized software, (2) original core software GCORE 1 and 2, and (3) materially changed core software GCORE 3, 4, 5 and 6." *Id*.

Plaintiff contends that, between 2003 and 2014, Honeywell "falsely propose[d], invoice[d]and receive[d] payment [from]… the [G]overnment" of software license fees of $10,000 per unit for at least 25,000 units of the "materially changed" core software (GCORE 3, 4, 5 and 6). *Id*. at 13. Plaintiff contends that Honeywell knew that it was not entitled to receive such license fees because it acknowledged in the "Honeywell Technology Roadmap" that GCORE had been "materially changed" by the integration of Government-funded software. *Id*. at 13, 18. Plaintiff contends that, as a "sophisticated government contractor," Honeywell knew that, as a result of the Government-funded changes to GCORE, the Government had acquired a "royalty free license[]" to the software. *Id*. at 12-13.

## III.        Analysis

### A.        Legal Standard

To withstand a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead each of its claims with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). However, "the tenet that a court must accept as true all of the allegations contained in a complaint

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
|---|---|---|---|
| Title | United States of America et al v. Honeywell International, Inc. | | |

is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 678-79.

"The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011). "One violates the [FCA] if one has 'actual knowledge' that one is submitting a false or fraudulent claim for payment or approval, acts in deliberate ignorance of the truth or falsity of one's false claim, or acts in reckless disregard of the truth or falsity of one's false claim." *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992); *Hagood v. Sonoma Cnty. Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991). "The improper interpretation . . . of a contract, without more, does not constitute a false claim for payment." *Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 329 (9th Cir. 1995).

"Because they involve allegations of fraud, *qui tam* actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *Corinthian Colleges*, 655 F.3d at 992. Fed. R. Civ. P. 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

### B.    Application

Defendant contends that the FAC does not allege sufficient facts to support a plausible inference that it knowingly submitted a false statement or claim to the Government. Dkt. 73, at 10. Plaintiff contends that Honeywell acknowledged in the "Honeywell Technology Roadmap" that GCORE 3, 4, 5 and 6 incorporated government-funded software. Plaintiff further contends that Honeywell is a "sophisticated government contractor." Dkt. 72, at 12-13. As a result, Plaintiff contends Honeywell knew or should have known that, because government-funded software was integrated into GCORE 3, 4, 5 and 6, the Government had the right to a royalty-free license to the software. *Id.* However, that Honeywell acknowledged that GCORE 3, 4, 5 and 6 incorporated government-funded software does not give rise to the plausible inference that Honeywell knew it was not entitled to charge the license fees at issue

### 1.    The Parties Dispute Regarding the Proper Interpretation of the Software License Agreement and Applicable Regulations

Honeywell contends that the incorporation of government-funded software into GCORE 3, 4, 5 and 6 does not preclude it from charging the license fees at issue for two reasons. *First*,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
| Title | United States of America et al v. Honeywell International, Inc. | | |

Honeywell contends that the Government Contracting Officer[2] properly determined that the software was a "commercial item" as defined by 48 C.F.R. § 2.101(a)(2). Dkt. 73, at 12. If the software is a "commercial item," then the Government has "only the rights specified in the license," even after Government-funded software is integrated into the software. 48 C.F.R. § 227.7202-3(a).

*Second*, Honeywell contends that "both Honeywell and the Government have understood the license" not to cover GCORE as a whole, but only 14 individual software "functions and capabilities" of GCORE. Dkt. 73, at 13. These are listed in Appendix A to the Software License Agreement; each was funded exclusively by Honeywell. *Id.*; Dkt. 49-1, Exh. 3. Honeywell contends that it is entitled to charge license fees for those privately funded individual functions and capabilities because they are "segregable" from GCORE under 48 C.F.R. § 252.227–7014. Dkt. 79, at 5 n.3.[3] A corporation may charge the Government a license fee for "segregable" portions of software, even where the Government has partially funded other portions of the software.[4] 48 C.F.R. § 252.227–7014; Ralph C. Nash, Jr. & John Cibinic*, The New DOD "Rights in Software" Policy: Half a Loaf*, Nash & Cibinic Report (March 1996).

Plaintiff disputes each of Defendant's positions. Plaintiff contends that the software is not a "commercial item." Dkt. 72, at 15-16. Plaintiff also contends that the license fees were charged for GCORE itself, not individual functions and capabilities. Dkt. 78, at 13. Finally, Plaintiff contends that the individual functions and capabilities cannot be segregated from GCORE, because "the lowest practicable level of the core H-764 EGI software . . . is GCORE itself." *Id.*

> 2. <u>Whether the FAC Alleges Sufficient Facts to Give Rise to a Plausible Inference With Respect to Scienter</u>

For purposes of the present Motion, it is not necessary to determine which party has advanced the correct interpretation of the Software License Agreement and the applicable Government regulations regarding commerciality and segregability of software. Thus, even if Plaintiff's interpretations were deemed correct, the FAC is deficient because it does not allege facts to

---

[2] A Government "Contracting Officer" has "authority to enter into, administer, and/or terminate contracts and make related determinations and findings." 48 C.F.R. § 2.101. A Contracting Officer also has authority to "determine whether a particular subcontract item meets the definition of 'commercial item.'" 67 Fed. Reg. 38023-01 (May 31, 2002).

[3] 48 C.F.R. § 252.227-7014 provides that, a "segregable portion of . . . software" includes "a software sub-routine that performs a specific function." 48 C.F.R. § 227.7203-4(b).

[4] Although the Government obtains a right to a royalty-free license for software that it has partially funded, "the funding determination 'should be made at the lowest practicable segregable portion of the software. . .'" Ralph C. Nash, Jr. & John Cibinic*, The New DOD "Rights in Software" Policy: Half a Loaf*, Nash & Cibinic Report (March 1996) (citing 48 C.F.R. § 227.7203-4(b)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
|---|---|---|---|
| Title | United States of America et al v. Honeywell International, Inc. | | |

support the plausible inference that, at the time that Honeywell proposed and received the license fees at issue, it *knew* that the Plaintiff's interpretation was correct.

Although scienter "can be alleged generally" under Fed. R. Civ. P. 9(b),[5] a complaint must nevertheless "clearly allege sufficient facts to support an inference or render plausible that [Defendant] acted while knowing that" it was not entitled to charge the license fees at issue. *Corinthian Colleges*, 655 F.3d at 997. "Qui tam suits are meant to encourage insiders privy to a fraud on the government to blow the whistle on the crime." *Wang*, 975 F.2d at 1419. "Because 'insiders privy to a fraud on the government' should have adequate knowledge of the wrongdoing at issue, such insiders should be able to comply with Rule 9(b)." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Wang*, 975 F.2d at 1419).

As stated in the Court's prior Order, "the facts as pleaded [in the proposed Fourth Amended Complaint] suggest that the scope of the license at issue, the segregability of the components of the software at issue, and the source of funds of the components of that software, may be matters on which reasonable parties could disagree. . . . The mere allegation that Defendant improperly interpreted government regulations regarding commerciality and segregability does not give rise to the plausible inference that it did so knowingly or recklessly in violation of the False Claims Act." Dkt. 67, at 5. *See Hopper v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) ("[I]t is not the case that any breach of contract, or violation of regulations or law, or receipt of money from the government where one is not entitled to receive the money, automatically gives rise to a claim under the FCA."); *Wang*, 975 F.2d at 1421 ("The [FCA] is concerned with ferreting out wrongdoing, not scientific errors. What is false as a matter of science is not, by that very fact, wrong as a matter of morals."); *Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 378 (4th Cir. 2008) ("An FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision. To hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract.").

---

[5] Rule 9(b) provides that mental state may be alleged generally, but the "circumstances constituting fraud or mistake" must be stated "with particularity." Here, the FAC is deficient because it does not identify with particularity those who allegedly made knowingly fraudulent representations to the Government. Plaintiff contends that the fraud was committed by "[t]he officers, managers and employees of Defendant . . . primarily the Honeywell Defense and Aerospace Division in Clearwater, Florida." Dkt. 78, at 7. Such a broad allegation is not "specific enough to give defendant[] notice of the particular misconduct which is alleged." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993); *Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004) ("The complaint also fails to identify with specificity who precisely was involved in the fraudulent activity. The complaint repeatedly refers generally to 'management' and provides a long list of names without ever explaining the role these individuals played in the alleged fraud—an especially surprising deficiency given that [Plaintiff] worked for [Defendant]  . . . for five years. This imprecision . . . failed to give the companies sufficient information to answer the complaint.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**


| | | | |
|---|---|---|---|
| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
| Title | United States of America et al v. Honeywell International, Inc. | | |

Plaintiff appears to contend that, because Honeywell's interpretation of the Software License Agreement and the applicable Government regulations is so clearly incorrect, it gives rise to the plausible inference that Honeywell, a sophisticated and experienced Government contractor, knew that yet sought a financial benefit to which it knew it was not entitled. That argument is not persuasive. "In assessing the plausibility of an inference, we draw on our judicial experience and common sense and consider obvious alternative explanation[s],'" *Cafasso v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) (citing *Iqbal* 556 U.S. at 679).

Here, an "obvious alternative explanation" for Honeywell's allegedly false assertion of its right to charge a license fee is that Honeywell believed in good faith that it had such a right because: (i) GCORE was a commercial item for which the Government obtained only the rights provided for in the Software License Agreement; or (ii) the license fees were charged solely for the 14 privately funded, segregable functions and capabilities that were a part of all versions of GCORE that were sold to the Government.[6] It has not been shown that either of these positions is so clearly incorrect that either or both give rise to the plausible inference that Honeywell knew it was incorrect.[7] To the contrary, as stated in the Court's prior Order, "the Contracting Officer knew Defendant's position through [its disclosures], and determined that Defendant was entitled to charge a software license [fee]. Although Defendant's disclosures do not, by themselves, defeat a claim of fraud, 'the knowledge possessed by officials of the United States [as a result of Defendant's disclosures] may be highly relevant. Such knowledge may show that the defendant did not submit its claim in deliberate ignorance or reckless disregard of the truth.' *Hagood*, 929 F.2d at 1421." Dkt. 67, at 4.[8]

---

[6] As discussed above, if either of Honeywell's positions were correct, then the integration of Government-funded software into GCORE 3, 4, 5 and 6 that was acknowledged in the "Honeywell Technology Roadmap" would not bar Honeywell from charging a license fee.

[7] Moreover, the FAC does not allege with particularity that the 14 privately funded individual functions and capabilities contained within all versions of GCORE had been rendered obsolete or valueless as a result of the changes made to later versions of GCORE. Thus, although Plaintiff alleges that the changes were "material," the FAC does not allege facts that give rise to a plausible inference that Honeywell knew or should have known that the license fee covered GCORE as a whole, rather than the 14 individual functions and capabilities.

[8] That Honeywell is a sophisticated and experienced government contractor, does not alone give rise to the plausible inference that it knew or should have known that its interpretation of the Software License Agreement and applicable government regulations was incorrect. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307 (Fed. Cir. 2011) ("[R]elator contends that asserting in the complaint that BP is a 'sophisticated company and has experience applying for, obtaining, and litigating patents' is enough under Rule 9(b). This court disagrees. That bare assertion provides no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known the patent expired. Conclusory allegations such as this are not entitled to an assumption of truth at any stage in litigation.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-02214 JAK (JCGx) | | Date | January 24, 2014 |
|---|---|---|---|---|
| Title | United States of America et al v. Honeywell International, Inc. | | | |

Furthermore, Plaintiff provides no basis for the assertion that "the lowest practicable level of the core H-764 EGI software . . . is GCORE itself," rather than individual functions and capabilities of GCORE. Dkt. 78, at 13. As stated in the Court's prior Order, "[t]he proper characterization and determination of the 'lowest practicable segregable portion of the software' is a question of fact. Its determination will require the presentation of evidence, which may include expert testimony." Dkt. 67, at 8. Thus, Plaintiff's position regarding the segregability of GCORE is not so clearly correct as to raise a plausible inference that Honeywell knew that and, as a result, knew that it was not entitled to charge a license fee.

For these reasons, the FAC fails sufficiently to allege that Honeywell possessed the mental state necessary to establish liability under the FCA. *See Corinthian Colleges*, 655 F.3d at 997 (affirming dismissal of FCA claim where complaint failed "clearly [to] allege sufficient facts to support an inference or render plausible that [defendant] acted while knowing that" it was not eligible to receive the funds for which it applied."); *Oliver v. Persons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) ("[A] contractor relying on a good faith interpretation of a regulation is not subject to [FCA] liability . . . because the good faith nature of his or her action forecloses the possibility that the scienter requirement has been met."); *Berg v. Honeywell Int'l, Inc.*, No. 3:07-CV-00215, 2013 WL 3223391 *5-6 (D. Alaska, June 24, 2013) ("As the Ninth Circuit has acknowledged, 'bad math is not fraud' and proof of mistakes is not proof that there was fraud. . . . Setting forth which numbers and measurements were wrong and simply using adjectives like 'knowingly' or 'deliberately' to describe those numbers and measurements does not satisfy the heightened pleading standard of Rule 9(b)."); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) (affirming dismissal of complaint that "does not allege any facts to suggest . . . why anyone at [defendant corporation] should have known that the views expressed were false.").

### 3.      Whether The Motion Should Be Granted With Prejudice

"[L]iberality in granting leave to amend is subject to several limitations. Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay. Further, the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (internal citations omitted).

Plaintiff has presented six versions of his Complaint during the course of this litigation. In each, he has failed sufficiently to allege a factual basis with respect to scienter. Moreover, the Court's November 8, 2013 Order stated that Plaintiff's proposed Fourth Amended Complaint was deficient because it "contains no specific factual basis to support its general claim that Defendant knew or should have known that it was providing false information to the government." Dkt. 67 at 5. Consequently, the Court expressly directed that any amended pleading was to include "additional and specific facts, alleged in good faith, to create a plausible inference with respect to each element of a cause of action under the False Claims Act." *Id.* at 9. For the reasons discussed above, the FAC failed to do so.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV12-02214 JAK (JCGx) | Date | January 24, 2014 |
|---|---|---|---|
| Title | United States of America et al v. Honeywell International, Inc. | | |

As noted, Plaintiff has presented six versions of the complaint during this litigation. Through these filings he has had several opportunities to amend in order to address the deficiencies identified in this Order. Most recently, Plaintiff has had the opportunity to address these deficiencies not only in his Third Amended Complaint (Dkt. 21), but in the proposed Fourth Amended Complaint (Dkt. 51-1, Exh. A). It was that version of the complaint that he lodged as part of his motion for leave to file a fourth amended complaint (Dkt. 51) and whose deficiencies were identified in the prior order. Dkt. 67. Yet, the FAC still fails to allege sufficient facts to remedy the problems identified in the Court's prior Order.

In light of this procedural history, Plaintiff has had more than an ample opportunity to state viable claims under the FCA. Therefore, it is reasonable to conclude that any further amendment would be futile. *In re Epogen and Aranesp Off-Label Marketing and Sales Practices Litigation*, No. MDL 08-1934, 2009 WL 1703285 *8 (C.D. Cal. June 17, 2009) ("[T]he Court previously identified, in detail, the deficiencies in the complaint and granted leave to amend. However, Plaintiffs have made few substantive changes and added no new facts in support of their allegations of fraud. Instead, they filed an Amended Complaint with semantic changes that did nothing to cure the previous fatal defects. Accordingly, dismissal is with prejudice."); *Crane v. Yarborough*, CV-05-8534, 2012 WL 1067965 at *13 (C.D. Cal. Feb. 6, 2012) ("Since plaintiff has already twice amended his complaint, but has been unable to state a viable claim against any of the defendants based on essentially the same factual allegations, it appears that any further amendment would be futile."). This procedural history also shows that a further amendment would unduly burden Defendant. It has expended substantial resources in responding to the five prior versions of the complaint.

## IV.     Conclusion

For the foregoing reasons, the Motion to Dismiss for Failure to State a Claim is GRANTED WITH PREJUDICE, *i.e.*, without leave to amend. Within ten days of the issuance of this Order, after conferring with Plaintiff's counsel in an effort to reach a stipulation as to the form, if not the substance, of a proposed judgment, Defendant shall lodge a proposed judgment by February 3, 2014. Any objections shall be filed within 7 days from the date the proposed judgment was lodged.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer     ak